## BERT F. FENN, Appellant, v. DORA REBER, Administratrix Respondent.

St. Louis Court of Appeals. Argued and Submitted November 7, 1910. Opinion Filed November 29, 1910.

1. **BILLS OF EXCEPTIONS: Signing and Allowing: Compelling Action: Mandamus.** The act of a judge of a court of general jurisdiction in allowing exceptions and signing a bill preserving them, while a judicial act, to be performed under the sanction of his oath of office, is under the control of a superior court by mandamus—not to advise the judge how he shall act, but to compel him to move in the matter; the mere act of signing and approving a bill of exceptions being of a ministerial nature, although the court has a legal discretion in determining the character of the particular bill to be signed.

2. **EVIDENCE: Judicial Notice: Personnel of Court.** The appellate court may take judicial notice of what judges were serving as judges of a circuit court under its jurisdiction, but may not take judicial notice of the length of time a particular judge was assigned to a particular division of court nor which of a number of judges was presiding in a particular division.

3. ———: ———: ———: **Circuit Court, City of St. Louis: Rotation of Judges Among Divisions.** The appellate court will take judicial notice that the rule of rotation among the judges of the circuit court of the city of St. Louis prevails, under section 4149, Revised Statutes 1909, which provides that the judges of that court shall rotate in service between the nine divisions for the trial of civil cases and the three divisions for the trial of criminal cases, and that the result of sending three of the judges of the civil divisions to the criminal divisions necessarily involves a rotation of the judges among the civil divisions.

4. **BILLS OF EXCEPTIONS: Signing and Allowing.** Under section 2032, Revised Statutes 1909, the judge who is acting as judge of the court at the time the bill of exceptions is presented is the proper one to sign it, although he may not be the successor of the judge who tried the case, by reason of another judge having presided in that court in the meantime.

5. **EVIDENCE: Judicial Notice: Tenure of Office of Circuit Judge.** The appellate court will take judicial notice that a certain circuit judge was elected for a term of office which had not expired.

6. **BILLS OF EXCEPTIONS: Signing and Allowing: Succeeding or Acting Judge: Circuit Court, City of St. Louis: Statute.** The phrase "shall go out of office" in section 2032, Revised Statutes 1909, providing that where a judge who heard the case "shall go out of office" before signing the bill of exceptions, it shall be signed by the succeeding or acting judge of the court in which the case was heard, does not mean, as applied to the circuit court of the city of St. Louis, where, by virtue of section 4149, Revised Statutes 1909, the judges rotate in service between the nine civil and three criminal divisions, that the term of office of the judge who tried the case must have expired, but means that he "shall go out of office" so far as concerns his presiding in that particular division of the court; so that where a case was tried in one of the divisions of said court and the bill of exceptions was signed by a judge other than the one before whom the case was heard but who was then sitting in said division, the record proper showing that the latter judge constituted the court at the time the bill of exceptions was signed and ordered filed, such bill of exceptions was signed by the proper judge.

7. ———: ———: **One Judge Only Qualified to Act: Courts.** Only one judge is qualified to sign a bill of exceptions, and there can be but one judge, whether *de facto* or *de jure*, for one division of court, and the bill must be signed by the judge who is presiding over the court at the time the bill is tendered and filed.

8. ———: **Nature and Purpose.** The object and purpose of the bill of exceptions is to make that a matter of record which otherwise would not be so.

9. **COURTS: Records: Under Orders of Judge.** Nothing can become part of the record of the court unless ordered to be made so by the judge then holding the court and presiding therein, in whom rests the sole power over the court's records.

10. **CONTRACTS: Written Contract: Pleading: Denial of Execution Under Oath.** Where plaintiff filed an account as a claim against an administratrix in the probate court for "legal services rendered," as per agreement to pay twenty per cent, but did not file any instrument in writing or copy thereof, as required

by section 194, Revised Statutes 1909, on appeal to the circuit court, defendant was at liberty to contest the contract sued upon, although its execution was not denied under oath, since plaintiff did not bring himself within the provisions of the statute relating to written contracts, by filing the original contract or a copy thereof.

11. ——: ——: ——: ——: **Executed by Both Parties.** Where a contract sued upon is signed by both parties, section 1985, Revised Statutes 1909, providing that when any petition shall be founded upon an instrument in writing, charged to have been executed by the other party and not alleged to be lost or destroyed, the execution of such instrument shall be adjudged confessed, unless the party charged to have executed the same deny the execution thereof under oath, does not apply.

12. ——: ——: ——: ——: **Failure to Deny: Defenses Open.** In a suit on a written instrument, the failure of defendant to deny its execution under oath does not preclude all attack on it, but it may be resisted on the ground of illegality, failure of consideration, fraud, or even that it never existed.

13. **PROBATE COURTS: Executors and Administrators: Action on Account: Defenses.** It is always open to the defendant in the probate court, as in that of a justice of the peace, and again in the circuit court, on appeal, to interpose any defenses to an account presented as a demand, provided they are not so inconsistent as to be destructive of each other.

14. **APPELLATE PRACTICE: Objections and Exceptions: Not Made During Trial.** Where objections and exceptions are not made during the trial, they cannot be made in the motion for a new trial or in the brief filed in the appellate court.

15. ——: **Conclusiveness of Verdict.** A verdict, supported by substantial evidence and approved by the trial judge, is conclusive on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*T. E. Francis,* for appellant, on sufficiency of Bill of Exceptions.

(1) The bill of exceptions was properly authenticated. Berry Bros. v. Leslie, 131 Mo. App. 236; Ranney v. Packing Co., 132 Mo. App. 324; R. S. 1909, sec. 2032. (2) The phrase "shall go out of office" appearing in sec. 2032, R. S. 1909 means ceasing to preside

in the court or division in which the case was tried, whether by amoval, resignation, death, expiration of term, assignment to another court or division, or any other cause. Cases cited, supra.

*Bert Fenn, pro se,* on merits.

(1) The claim being founded on a written instrument charged to have been executed by defendant, and there being no answer denying its execution, verified by affidavit, the execution of said contracts were never denied. Hence their execution should have been adjudged confess. R. S. 1899, sec. 746; Rothschild v. Frensdorf, 21 Mo. App. 318; Smith Co. v. Rembaugh, 21 Mo. App. 390; McGill v. Wallace, 22 Mo. App. 683; Faircloth v. Tinsley, 83 Mo. App. 586. (2) The court erred in refusing to limit the issues and the evidence of the contract of October 25, 1906, to the existence or non-existence of fraud in the procuring of same by plaintiff. It is not only the rule that the facts constituting fraud must be pleaded, but it is also the rule that, when the specific facts are pleaded, the proof must be confined to the precise charges specified. Story v. Story, 188 Mo. 110; Nagel v. Railroad, 167 Mo. 96. (3) The court erred in permitting defendant to plead fraud in the procurement of said contracts, and that no such contract as October 25, 1906, had ever been signed. *Non est factum* and fraud are inconsistent defenses. Vette v. Evans, 111 Mo. App. 588; Betz v. Home Tel. Co., 121 Mo. App. 473.

*Theodore C. Eggers* and *Harmon J. Bliss* for respondent.

(1) Settling and signing bills of exceptions are judicial acts, which must be performed by a judge under the sanction of his oath of office, and, unless a different rule has been prescribed by statute, by the one who tried the case and to whose rulings the exceptions were taken. If not so signed the bill is a nullity, and on

appeal nothing comes before the appellate court but the record proper. R. S. 1909, secs. 2029-2033; Consaul v. Liddell, 7 Mo. 250; Cranor v. School District, 18 Mo. App. 397; Sahlein v. Gum, 43 Mo. App. 315; Patterson v. Yancey, 97 Mo. App. 687; Voullaire v. Voullaire, 45 Mo. 602. (2) The provisions Rev. Stat. of Mo. 1909, sec. 1985 providing for the verification by affidavit of an answer to a petition founded upon an instrument in writing, have no application to the case at bar, for the following reasons: First, Because the pleading filed by appellant in this cause does not purport to be founded upon any instrument in writing; Second, Because appellant has not complied with the provisions of the statutes of this state relative to the bringing of actions founded upon instruments in writing. R. S. 1909, sec. 194; R. S. 1909, secs. 1843-44. Third, Because the objection that the answer of respondent was not verified by affidavit was not raised by appellant in the trial court, and cannot be raised for the first time in the appellate court. Ferneau v. Whitford, 39 Mo. App. 311; Boggs v. Laundry Co., 86 Mo. App. 616; Pearson v. Gillett, 55 Mo. App. 312; Kelly v. Thuey, 143 Mo. 437. Fourth, Because it is asserted by appellant that the alleged instrument in writing claimed by him to be sued on in this cause was executed by both parties. Campbell v. Wolf, 33 Mo. 459; Bowling v. Hax, 55 Mo. 446; Kelly v. Thuey, 143 Mo. App. 422.

REYNOLDS, P. J.—Plaintiff below, appellant here, filed an account as a claim against the respondent, administratrix, in the probate court of the city of St. Louis, the account being for $371.20, for "legal services rendered in collecting eighteen hundred and fifty-six dollars and fifty-seven cents from the Pittsburg Life & Trust Company as per agreement of twenty per cent," also for three items, amounting to $5.50, for sums of money paid out by plaintiff for certain costs, etc. Beyond this account no other statement of the cause of

action was filed in the probate court; notice of demand on the administratrix and affidavit of service of it on her, however, being also filed. It appears that the case was tried in the probate court before a jury and from the verdict rendered by it an appeal was taken to the circuit court. On a trial *de novo* in the latter, before the court and a jury, there was a verdict for the plaintiff for the $5.50, being the items of money paid out, from which, after interposing a motion for new trial and saving exceptions to that being overruled, plaintiff below has duly perfected an appeal to this court.

It appears from the abstract of the record proper that on January 11, 1910, and during the December term, 1909, of the circuit court, "plaintiff's bill of exceptions was by the court approved, allowed, signed, sealed, ordered filed, and thereupon on the day and at the term last aforesaid, filed with the clerk of said court, all of which is shown by orders of record of that date (Book 230, page 465). Said bill of exceptions, omitting captain and formal parts, is as follows:" Then follows the bill of exceptions. It also appears by the abstract of the record proper that the trial of the cause was begun in the circuit court of the city of St. Louis on January 23, 1909, during the December term, 1908, by the court and a jury, and was concluded on January 23, 1909, during that December term. It further appears from the abstract of the bill of exceptions that it was signed by the Hon. Daniel D. Fisher, he signing as "Judge of Division No. 2 of the circuit court of the city of St. Louis, State of Missouri, in and for the Eighth Judicial Circuit on the date aforesaid, that is, January 11, 1910." It does not appear that the bill of exceptions was approved or consented to by any attorney for defendant, while it does appear that the bill of exceptions was prepared and submitted by the attorneys for the appellant.

I. It is urged by the learned counsel for respondent, that as the abstract shows the cause was tried in the circuit court before the Hon. J. Hugo Grimm, while the bill of exceptions was signed by the Hon. Daniel D. Fisher, that therefore the bill of exceptions is not properly signed and is invalid, it being argued that in the absence of a special statute to the contrary, the bill of exceptions must be signed by the judge who tried that case, and that otherwise the bill is a nullity and nothing is before the appellate court but the record proper. In support of this proposition, we are referred to sections 2029 to 2033, R. S. 1909; Consaul v. Liddell, 7 Mo. 250, l. c. 258; Voullaire v. Voullaire, 45 Mo. 602; Cranor v. School District, etc., 18 Mo. App. 397; Sahlein v. Gum, 43 Mo. App. 315; Patterson v. Yancey, 97 Mo. App. 681, 71 S. W. 845.

The counsel who argued this point in the case at bar for appellant cites Berry Bros. v. Leslie, 131 Mo. App. 236, 110 S. W. 685, and Ranney v. Packing Co., 132 Mo. App. 324, 110 S. W. 613, as supporting his contention, and in argument before us denied the application of the cases cited by counsel for respondent, and claimed that the remark of Judge Goode in Patterson v. Yancey, supra, l. c. 692, that this court ruled "that the bill of exceptions was properly authenticated by the signature of Judge Fort, without ruling that it would have been invalid had Judge Evans signed it," is to be held as a strong intimation, judging the opinion by the trend of its reasoning, that it would have been valid if signed by Judge Evans, the judge of the circuit in which Carter county was included when the bill was signed and filed and made of record.

Section 2032, Revised Statutes 1909, provides that "in any case where the judge who heard the cause shall go out of office before signing the bill of exceptions, such bill, if agreed to be true by the parties to the action, or their attorneys, or shown to the judge to be correct,

153 App—15

shall be signed by the succeeding or acting judge of the court where the case was heard."

The question presented for consideration, arising out of that section, is as to whether there is sufficient in the record to show us that the Honorable J. Hugo Grimm had gone out of office as judge in Division No. 2 of the circuit court and the Honorable Daniel D. Fisher was either the successor or the acting judge, presiding in that division—that being the division in which the case was heard—at the time the bill was presented, signed and admitted to record, in such sense as to warrant him, under the provisions of the statute, in signing the bill of exceptions tendered by the attorneys for plaintiff below, it appearing that it had not been agreed to by counsel for the defendant nor filed with their consent.

The act of the judge of a court of general jurisdiction in allowing exceptions and signing the bill preserving them, while a judicial act, "to be performed by a judge under the sanction of his oath of office," (Patterson v. Yancey, supra, l. c. 687), has always been recognized in this state as under the control of a superior court by mandamus, "not to advise the judge how he shall act but that he shall move in the matter." [State ex rel. Millett v. Field, 37 Mo. App. 83, l. c. 95.] This is the rule prevailing generally. See High, Extraordinary Legal Remedies (3 Ed.), secs. 199 to 215a; the mere act of signing and approving the bill of exceptions, however, being held to be of a ministerial nature, although a legal discretion is to be observed in determining the character of the particular bill to be signed. [High, supra, sec. 201.] From the time of the opinion rendered by Judge Scott in 1860, in Walker v. Stoddard Circuit Judge, 31 Mo. 123, down to the latest case which has come under our observation, covering the matter of controlling the action of an inferior court by mandamus, that of State ex rel. Priddy et al. v. Gibson, 187 Mo. 536, 86 S. W. 177, a decision by Judge Lamm, speak-

ing for the Court in Banc in 1905, our Supreme Court has invariably asserted, and in very many cases exercised its right, by the writ of mandamus, to control the action of a judge of an inferior court, to the extent of compelling that judge to act, not how he should act, but to act, on a bill of exceptions being properly presented to him for his approval and signature.

An examination of the cases cited by counsel, as well as of others relating to the signing of bills of exception, does not throw very much light on this point as it arises in this particular case. In all of them, it is true, there is discussion of the law governing the signing of bills of exception, but no decision involving the construction of section 2032 as applicable to the situation created in the Eighth Judical Circuit by the statutes relating to that circuit, has, so far as we know, been presented for adjudication in connection with that section. That situation is now before us and demands consideration of the mode of procedure and practice peculiar to the circuit court of the Eighth Judicial Circuit, which circuit comprises the city of St. Louis alone.

The law relating to that court is now article 8, of chapter 35, sections 4147 to 4167, Revised Statutes 1909. That court, as at present constituted, is composed of twelve divisions. While section 4149, as published in the revision of 1909, provides for but two divisions for the trial of criminal causes, by Act of March 21, 1905 (Laws, 1905, p. 127), three such divisions are provided for, divisions Nos. 1 to 9 having jurisdiction of civil, and Nos. 10, 11 and 12 of criminal, causes. After sections providing for the twelve divisions and for the salary of the judges, follows section 4149, which provides, among other things, for two (or as amended, for three) divisions for the trial of criminal causes, and that the judges assigned to the criminal divisions shall sit in those divisions "for the trial of criminal causes then or thereafter pending in said court, and for the disposition of such other business arising under the criminal jurisdic-

tion of the court as may come before it, and to whom shall thereupon be transferred for trial and disposition, in such proportions between themselves as said court in general term shall determine, all of the unfinished cases, actions and proceedings which shall have been, on the first Monday of January, 1897, transferred to said court from the said criminal court. The judges so assigned for the trial of said criminal cases, and the disposition of other business arising under the criminal jurisdiction, shall try and dispose of the cases so transferred to them, and conduct the business arising under said criminal jurisdiction during such time or times as the court, in general term, may direct, and said general term shall, from time to time, replace the judges so assigned to try said criminal cases and dispatch said criminal business, with other of its members selected by it to that end, and, as far as practicable, alternately and in rotation, so that from time to time each of their number shall in turn serve in the transaction of the criminal business of the court, unless the judges, sitting in general term, shall in their discretion, excuse any member of the court from so serving." It may be said in passing, that section 4149, in terms, applies particularly to the criminal divisions of the court and the disposition of business therein, and it is very evident that it would be a forced construction to say that the judges so assigned to the criminal divisions could not sign bills of exceptions in criminal cases in which steps had been taken by their predecessors on the bench. Section 4152 provides that "in addition to the ordinary power of making rules conferred by the general law, the court may make all rules which its peculiar organization may, in its judgment, require different from the ordinary course of practice and necessary to facilitate the transaction of business therein," all rules for the governing of the court at special term being uniform for each division.

The peculiar construction of the circuit court of the Eighth Circuit was considered to some extent in the case of State ex rel. McCaffery v. Eggers, 152 Mo. 485, 54 S. W. 498. Judge VALLIANT speaking for the Court in Banc and referring to what are now sections 4151 and 4152, Revised Statutes 1909, and quoting from what is now section 4152, refers to the fact that under the statute the circuit court of the city of St. Louis, in general term, is required to make rules for the distribution of the cases among the divisions in special term. We have quoted section 4152 above. Judge VALLIANT further states that when a case is regularly assigned to a particular division, "that division for the purposes of that case is as exclusive in its jurisdiction as if it were the whole court or as if the court was a unit; another division or another judge presiding in special term has no more jurisdiction over that case than the circuit court of an adjoining county. So held in Haehl v. Railroad, 119 Mo. 325." This Raehl case, as well as the Eggers case, was followed and approved in Goddard to use v. Delaney, 181 Mo. 564, l. c. 581, 80 S. W. 886.

As that circuit and its courts are within the appellate jurisdiction of this court, we not only have before us the law which provides that its judges are to rotate in service between the civil and criminal divisions, but we are also warranted in taking judicial notice of the fact that at the time when this bill of exceptions was filed, the Honorable J. Hugo Grimm and the Honorable Daniel D. Fisher were judges in office, serving as circuit judges of the Eighth Circuit. It is not thought, however, that we can take judicial notice, in the absence of anything in the record showing it, of the fact as to the length of time a particular judge was assigned to a particular room or division, nor can we take judicial notice, outside of the record in each case, of which one of the judges, at any specified time, was in office and exercising the functions of judge in any particular room or division. We have nothing in this record to enable

us to say that Judge Grimm was transferred to the criminal division and Judge Fisher assigned to replace him in Division No. 2, but we have a right to take judicial notice of the fact that the rule of rotation among the judges of that court prevails under the statute and that the result of sending three of the judges from the civil divisions into the criminal divisions necessarily involves a rotation in the office of the judges, so far as respects their service in even the civil divisions of the circuit court, and it appears affirmatively in the record proper that it was signed and ordered of record by the court, and that the Honorable Daniel D. Fisher constituted the court.

It is apparent from the abstract of the record and bill of exceptions, that the Hon. J. Hugo Grimm was the judge before whom the cause was tried, presiding in Division No. 2 of the court, and it is stated that the trial was begun on the 23d of January, 1909, during the December, 1908, term of the court and was concluded on that day. It is fair to infer, therefore, that Judge Grimm presided at the trial from beginning to end. It is recited in the record proper as set out in the abstract, that on the 26th day of January, 1909, during said December term and within four days after the rendition of the verdict, the motion for new trial was filed and that it was continued to the February, 1909, term of the court, when it was overruled, and that an appeal was granted during that term to this court and that an extension of time for filing the bill of exceptions was granted down to and including the 12th of January, 1910, and that the bill of exceptions was filed on the 11th of January, 1910, that is to say, it was filed within the time granted by the various extensions of time. The entry in the abstract of the record proper recites that on this 11th of January, 1910, and during the December, 1909, term, the plaintiff's bill of exceptions was by the court approved, allowed, signed, sealed, ordered filed and filed. In this respect it corresponds to

what appears to be the state of the record as presented in Martin v. Castle, 182 Mo. 216, 81 S. W. 426. We are not advised by any recitals in the record or abstract, when the Honorable Daniel D. Fisher took his seat and presided in that division of the circuit court, beyond the fact of the recital that the bill was filed in court on the 11th of January, 1910, having been allowed, signed, sealed and ordered filed on that day by the court. Whether, within the meaning of section 2032, Judge Grimm "heard the cause," is not shown, if by "heard the cause," is meant, not the mere trial of it, but the motion for the new trial and action thereon and the various extensions of time for filing the bill.

It was not necessary that Judge Fisher should have been the immediate successor of Judge Grimm— he might have been, or might not: another judge may have presided in that division between the incumbency of Judge Grimm and that of Judge Fisher: the statute requires the then acting judge to sign. We have a right to assume that Judge Grimm had, under the statute and the rule of court, been transferred to some other division, whether criminal or civil is immaterial. While we take judicial notice of the fact that Judge Grimm was elected for a term of office as a circuit judge which has not expired, it is clear from this record here before us, that he had "gone out of office," so far as concerns presiding as judge of Division No. 2; he had gone from that division, to all intents and purposes as entirely as if his office as circuit judge had terminated; it certainly had terminated for the time being, unless he and Judge Fisher were both judges in that division at one and the same time. As our law makes no provision for two judges presiding at one and the same time in the same division, this could not be. [Ranney v. Packing Co., supra.]

No question of the tenure of office of the Hon. J. Hugo Grimm or of the entering upon office of the Honorable Daniel D. Fisher is involved, no disability on

the part of the judge who tried the case is suggested, so that this case is presented on the sole point of one in which the bill of exceptions is signed by the judge who then presided in the division of the court in which the case was tried, and section 2032, Revised Statutes 1909, specifically provides that in any case where the judge who heard the cause shall go out of office before signing the bill of exceptions, such bill, if agreed to be true by the parties to the action or their attorneys or shown to the judge to be correct, shall be signed by the succeeding or acting judge of the court where the case was heard.  We do not construe this section 2032, when it uses the language, "shall go out of office," as meaning, in a case presented by the peculiar construction of the circuit court of the city of St. Louis, that his term of office must have expired, but construing that section in connection with the fact of which we take judicial notice, that the judges of that court exchange from one division to another, we hold these words to mean in that connection "shall go out of office," so far as concerns presiding in that particular division of the court.

Bearing in mind what is said by our Supreme Court in Goddard v. Delaney, State ex rel. v. Eggers and Haehl v. Railroad, supra, to the effect that while the circuit court of the city of St. Louis, comprising the Eighth Judicial Circuit, is one court, composed of many parts called divisions, yet each division for certain purposes, among others the disposition and trial of causes to their conclusion, unless pending their determination a change of venue has been awarded from one division to another, or from that circuit to another, is in itself a complete court, independent of each of the other divisions; we therefore hold that it clearly appears by the record in this cause that at the time when the bill of exceptions was settled, signed, approved and filed, the Honorable Daniel D. Fisher was the acting judge of Division No. 2 of the circuit court of the city of St. Louis, the divis-

ion of the court in which the case was tried. As said in Martin v. Castle, supra, "It is inconceivable to us how there could be any question as to the authentication of the bill, or of its identification under the circumstances."

Counsel for respondent rely upon Patterson v. Yancey, supra, as decisive in their favor. As before remarked, we do not think that case meets the one at bar. Nor can we reconcile it with the great weight of authority in this state. Under all the decisions and the law, there is but one judge qualified to sign a bill of exceptions, and there can be but one judge, whether *de facto* or *de jure* for one division of any one court sitting and holding that court. [Ranney v. Packing Co., supra; Martin v. Merc. Town Mut. Fire Ins. Co., 124 Mo. App. 221, 101 S. W. 672.] The bill must be signed by the judge who is presiding over the court at the time the bill of exceptions is tendered and filed, the judge or person acting as judge, who signs it being at the time presiding in that court, either by special election or by assignment as provided by law. In State ex. rel. v. Gibson, supra, it is held that because Judge Gibson had gone out of office mandamus would not lie against him to sign a bill of exceptions.

The reason which lay at the foundation of the old rule, that if a judge who had tried a case went out of office pending action on a motion for a new trial, his successor must, as of course, grant a new trial, has been taken away by modern methods of court procedure, under which the official reporter takes down stenographically and verbatim all the proceedings at the trial, often indeed such occurrences in the progress of the case as rulings on motions, etc. By our modern practice a judge has before him, in the notes of the official reporter, all that took place in the cause, and it is within his power, when a bill of exceptions is tendered for his approval, to satisfy himself as to its correctness; it is easy for the bill to be, in the language of section 2032,

"shown to the judge to be correct." He can test its correctness. by the notes of the official reporter, even by the signature of his predecessor in office; in any of the many ways by which those things of which we have no personal knowledge, may be shown to us to be correctly recited. But it must be signed, ordered filed and made of record in·the court by the judge then presiding therein. It is always the duty of the judge, in signing a bill of exceptions, to know for himself that the bill tendered is correct; he is the one who is ultimately responsible for its correctness. It is a mistake to overlook the very real and sole object and purpose of a bill of exceptions; that is, to make that a matter of record of the court which before then and without the bill, was not of record—matters which arose in the progress of the case and not otherwise of record proper; not of the record of the court unless preserved by bill. By the filing of that bill it becomes incorporated into and becomes a part of the record. Nothing can be and become of the record of a court, unless ordered to be made of record by the judge then holding the court and presiding therein, in whom rests the sole power over those records. Applying section 2032 of the statute to the peculiar situation which must inevitably often arise in the circuit court of the city of St. Louis, we repeat that we hold that the bill of exceptions here involved was signed by the proper judge, and that it, with the record proper, is before us, open to our review.

II. Turning to the case on its merits, a careful reading of the testimony and of the proceedings at the trial, satisfies us that there was no reversible error committed. As to most of the points urged for a reversal, exceptions were not taken and preserved in such a manner that we can consider them.

It is urged that the defendant below, not having denied the execution of the contract relied on under oath, was not at liberty to contest it at the trial. That objection has no place in this case. Plaintiff did not

bring himself within the provisions of the statute relating to actions on written contracts. No contract such as referred to in section 194, Revised Statutes 1909, that is, no original or copy, as in case of a lost one, of an instrument of writing upon which the claim is founded, was filed. Nor is the action on an instrument of writing charged to have been executed by the other party and filed, or on such an instrument of writing, alleged to have been lost or destroyed, of which a copy is filed. It has been ruled in many cases, that these sections of our statute referred to, do not apply to instruments executed by both parties. It is very clearly apparent in the case at bar that the instrument in writing relied on as the contract between the parties was not filed with the statement of the account. That statement does not even allege a written contract. It is equally apparent from an examination of the proceedings at the trial that the contract relied upon was signed by both parties. Hence section 1985, Revised Statutes 1909, does not apply. [See Kelly v. Thuey, 143 Mo. 422, 45 S. W. 300.] A fatal objection to the consideration of this point is, however, that it was in no manner raised and saved by any exception in the trial court. Failing that, it cannot be here first made.

It is urged that the execution of the contract not having been denied under oath, its validity or fraud connected with obtaining it, is not open to inquiry. This is not the law. Even in a case where the maker of a note has failed to deny its execution under oath and has admitted its execution, its legality is open to contest without a denial of the execution of the note, verified by affidavit. [Wells v. Hobson, 91 Mo. App. 379.] It is held in Johnson v. Woodmen of the World, 119 Mo. App. 98, 95 S. W. 951, that though the execution of a contract in writing is not denied, it is open to the defendant to prove that it never existed or that the consideration for it had failed. The rule laid down in these cases applies with even more force in the case at

bar than in them, for in them the pleadings were written, while here, beyond the account filed in the probate court, there were no pleadings; all pleadings, save the statement, were, as they may be, oral, and in the trial, which is *de novo* in the circuit court, no pleadings are required. It is always open to the defendant in the probate court, as in that of a justice of the peace, and again in the circuit court, to interpose any defenses whatever that she has to the account presented as a demand, provided they are not so inconsistent as to destroy each other. [Munford v. Keet, 154 Mo. 36, 55 S. W. 271; Bank v. Stewart, 136 Mo. App. 24, l. c. 35, 117 S. W. 99.] The defendant in this case has a right to show, if she could, that the contract alleged to have existed between her and the plaintiff was obtained by fraud or that it had been rescinded or even that it had never existed. Both our Supreme and Appellate Courts have held in many cases, that the defense of fraud is available at law. [See *inter alia*, Earl v. Hart, 89 Mo. 263, l. c. 270, 1 S. W. 238.]

Over and above all, and fatal to the case of plaintiff, is the fact that proper objections and exceptions were not made during the trial. They are first made in the motion for a new trial as to some, as to others, by the brief in this court. That cannot be done. [Kelly v. Thuey, supra, l. c. 437.]

In the motion for new trial in this case, the allegations of error are general, that the court erred in the reception or exclusion of testimony. But when we look into the abstract of the proceedings at the trial, we fail to find objections and exceptions that cover the points now presented and urged upon us as a ground for reversal. Examining all of them, we do not think any of them are tenable. No attack is made in the motion for new trial on the instructions asked. We have read all of the rather voluminous abstract of the testimony, as the learned counsel for the appellant challenges it as lacking in any probative facts which can sustain the

verdict and judgment of the trial court. It is conflicting at almost every material point. We are therefore bound by the conclusion arrived at by the jury and the trial court. We find in the verdict no evidence of prejudice or passion, as claimed by counsel, but are bound to say that there is very substantial testimony to support the conclusion arrived at by the jury. Its weight was for the learned trial judge. All that we are responsible for is to see that it was properly in the case, that it substantially sustains the verdict and that no error of law appears. Examining this record, we find no reversible error in any of the rulings of the learned trial court on the admission and exclusion of testimony; there is substantial evidence to warrant the verdict; there is no error of law which is properly saved. The instructions which were given, as before noted, are not before us by a proper exception in the motion for new trial, giving or refusing instructions not being assigned as error. We find no reversible error in the case. The judgment of the circuit court is affirmed. *Nortoni, J.,* and *Caulfield, J.,* concur.